IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| MICHAEL CROW, | ) | CV 12-30-M-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| MARYLAND CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Maryland Casualty Company has filed a motion to dismiss Plaintiff Michael Crow's action for failure to state a claim. Defendant's motion will be denied regarding coverage under the underinsured motorist ("UIM") policy and granted regarding coverage under the medical payment endorsement. Plaintiff's allegation that his head injury sustained in the first accident was an "accident" covered under Defendant's underinsured motorist policy raises a plausible claim for relief. Defendant did not waive its right to assert the employee exclusion to medical payments by its prior payment to Plaintiff, however, so Plaintiff is not entitled to further medical payments under the policy.

1

## I. Factual and Procedural Background

This case involves two motor vehicle accidents. The first accident occurred on December 12, 2009, when Richard Venable rear-ended Plaintiff on Orange Street in Missoula, Montana. Plaintiff was examined by a doctor the following day who determined he suffered neck and back pain with muscle spasm. He also began having cognitive difficulties including slurred speech and memory problems. Plaintiff continued working for GPM Heating and Cooling as an HVAC technician that week despite these symptoms, and he was in a single car accident while working six days after the first accident. Plaintiff blacked out and drove off the road in his work vehicle, suffering physical injuries including a global traumatic brain injury. A CT scan demonstrated a bleed on the left side of his brain.

Neurologist Sherry Reid opined regarding Plaintiff's injuries that "the left temporal lobe hemorrhage was a direct result of the first motor vehicle accident on a more probable than not basis. The second motor vehicle accident caused a global traumatic brain injury. This most likely aggravated his symptoms from the first accident." (Doc. 1 at 3.) Plaintiff alleges the second accident was caused by a left temporal lobe hemorrhage he received in the first accident. Thus, he contends Venable also caused his second accident. Venable was insured by

2

Safeco who paid the limits of his policy as settlement of all claims for both accidents and release of the Venables. In the release, Crow reserved his claims against Safeco for a second policy limits. Plaintiff has a pending declaratory judgment action against Safeco in this court seeking coverage for a second policy limits. *See Crow v. Safeco*, CV-12-71-M-DLC. Crow alleges the policy limits paid by Safeco were insufficient to cover the full amount of his damages. Thus, based on Crow's allegations in the complaint, Venable is an underinsured motorist.

At the time of Plaintiff's second accident, his employer was insured by Defendant Maryland Casualty Company under a commercial policy. Plaintiff seeks UIM benefits under Defendant's policy based on his allegation that the injuries from the first accident caused the second accident. Plaintiff also seeks a declaration that he is entitled to medical payments under Defendant's policy. For purposes of this motion to dismiss, the parties stipulate that Defendant paid Plaintiff the $5,000 medical payment limits for the second accident. (Doc. 22 at 10.) The parties further stipulate the payment was made without a reservation of rights and with Defendant's knowledge that Plaintiff was within the course and scope of his employment when the second accident occurred. (Doc. 22 at 10.)

Defendant contends there is no UIM coverage because Plaintiff alleges the

first accident caused the second accident, and Plaintiff was not driving a work vehicle during the first accident, and therefore he was not an insured under the policy. Defendant further argues that it has no obligation to make medical payments under the policy due to the employment exclusion. Defendant asserts it did not waive its defenses to medical payment coverage by making the $5,000 policy limits payment because waiver cannot create coverage that does not otherwise exist.

On the other hand, Plaintiff alleges he is covered under Defendant's UIM policy because the first accident caused a brain hemorrhage he was continuously exposed to until six days later when his symptoms caused the second accident. Plaintiff argues Defendant waived the employment exclusion by its prior payment. He now seeks further medical payments by stacking the coverage available under the policy.

## II. Motion to Dismiss Standard

To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts generally limit their considerations to the allegations in the complaint. *Id.* at 555-559. Those allegations are accepted as true and viewed in a light most favorable to the

plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

When "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider material properly submitted as part of the complaint without converting the motion to one for summary judgment. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). The Court will consider the policy attached to Defendant's motion in deciding this motion to dismiss.

### III. Analysis

#### A. UIM Coverage

Defendant's arguments are based on the narrow proposition that because Plaintiff alleges the first accident caused the second accident, only the first accident may be considered in determining coverage under its policy. This analysis misconstrues Plaintiff's allegations, which are taken as true. Plaintiff alleges he is covered under Defendant's policy because Venable's negligence proximately caused the second accident and Venable's liability insurance did not cover the full extent of his damages for both accidents. Resolution of Defendant's

5

motion requires consideration of the circumstances of both accidents.

Insurance contract interpretation is a question of law resolved by the Court. The words in an insurance contract are "given their usual meaning and construed using common sense." *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 897 (Mont. 2003). "An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations. Whether an ambiguity exists is determined through the eyes of 'a consumer with average intelligence but not trained in the law or insurance business.' " *Id.* Ambiguities are construed in favor of the insured and in favor of extending coverage. *Id.*

Plaintiff is an insured under the Defendant's policy for the second accident. He was occupying a covered auto during the second accident because he was working at the time and driving a work vehicle. (Doc. 19-1 at 53.) Plaintiff clearly qualifies as an insured when viewing the circumstances of the second accident as alleged in the complaint. The issue then turns to whether Plaintiff is covered under the policy for the injuries he sustained in the second accident.

The following analysis determines whether Plaintiff has coverage under Defendant's policy for the second accident:

> (1) Plaintiff must be legally entitled to recover . . . compensatory damages from the owner or driver of an underinsured motor vehicle.

(2)  Plaintiff's damages must result from bodily injury caused by an "accident." Accident is defined as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' " (Doc. 19-1 at 37.)

(3)  Venable's liability for Plaintiff's damages must result from the ownership, maintenance, or use of the underinsured motor vehicle. (Doc. 19-1 at 52.)

Plaintiff satisfies the first requirement because he is legally entitled to recover damages from Venable who he alleges is underinsured.[1] Plaintiff already recovered $300,000 under Venable's Safeco liability policy as settlement with Venable for both accidents. As Defendant's repeatedly assert, the Court is required to assume Venable caused Plaintiff's second accident in deciding this motion to dismiss. Relying on this assumption, Plaintiff is legally entitled to recover compensatory damages from Venable.[2]

Plaintiff also satisfies the third element because Venable's liability for the

---

[1] Whether Venable is underinsured could depend on the outcome of Plaintiff's action against Safeco. For purposes of this order, however, the Court takes Plaintiff's allegation that Venable is underinsured as true.

[2] The Court recognizes Crow released the Venables in the settlement for both accidents. The release in the action against Safeco does not affect whether Crow is entitled to recover under his employer's UIM policy provided by Defendant in this matter.

second accident, if any, results from the use of the underinsured vehicle. An underinsured vehicle is defined by the policy as "a land motor vehicle or 'trailer' to which a liability bond or policy applies at the time of an 'accident,' but the amount paid under that bond or policy to the 'insured' is not enough to pay the full amount the insured is legally entitled to recover as damages." (Doc. 19-1 at 55.) Venable was driving a vehicle he owned during the first accident and Plaintiff alleges he was underinsured. These requirements are satisfied based on Plaintiff's allegations.

The real question is whether the brain hemorrhage Plaintiff suffered in the first accident fits under the definition of "accident" in the policy. Plaintiff says the second accident was caused by his repeated and continuous exposure to the brain hemorrhage he suffered in the first accident. Plaintiff further contends that if Defendant argues the condition to which Plaintiff must be repeatedly exposed is the contact with Venable's vehicle, that creates an ambiguity which must be resolved in his favor. There is no policy requirement that an accident must involve contact between two vehicles or that Venable's use of the vehicle occur at the time of the second accident.

Whether an occurrence is an "accident" is viewed from the victim's perspective in Montana. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 974 P.2d 623

(Mont. 1999). Even an intentional tort can be an accident if unexpected and unprovoked by the victim. *Id.* "[A]n insured's injuries 'arise out of the use' of an uninsured vehicle if the injuries originate from, or grow out of, or flow from the use of the uninsured vehicle." *Id.* at 639. This test is fact-intensive and interpreted expansively. *Id.* In *Wendell*, a driver was followed by several men in a vehicle who convinced him to stop his car, then punched him through his open window, pulled him out of the car and continued beating him. *Id.* at 626. The driver sued his insurer arguing that his uninsured motorist policy covered the injuries he sustained in the beating. The Montana Supreme Court held that "the average insured reasonably expects that, so long as an injury-causing event is unforeseen and unprovoked by the insured, injuries caused by uninsured motorists will be covered by UM coverage regardless of whether they were caused negligently or intentionally." *Id.* at 635.

The act of negligent entrustment in allowing an inexperienced driver to drive an insured's vehicle as well as the negligent driving act itself are not considered two separate accidents. *Infinity Ins. Co. v. Dodson*, 14 P.3d 487, 493 (Mont. 2000). However, this holding was based on the policy language that "all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of

one accident." *Id.* No such limitations exist in Defendant's policy. Other courts have also recognized that if an injury legally causes subsequent accidents and injuries, the person causing the first injury can be liable for the subsequent injuries. *See Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158 (Wyo. 1989).

Plaintiff's argument on the "accident" issue raises at least a plausible claim that there is coverage under the UIM policy, so Defendant's motion to dismiss will be denied on this issue. If an assault that occurred partially inside a parked vehicle can be considered an accident under a UM policy, it is at least plausible that a latent brain injury that causes an accident can also be considered an "accident" under this UIM policy. Although the "arise out of the use" issue discussed in *Wendell* is not identical to the "accident" issue in this case, the policy behind that holding is instructive. The requisite expansive interpretation of that language here could include a finding that Crow's injuries from the second accident originated from, grew out of, or flowed from the use of Venable's underinsured vehicle. The Montana Supreme Court found an ambiguity in both the terms "accident" and "arising out of the use" language in *Wendell*. If Defendant's policy definition of accident is indeed ambiguous, which the Court need not decide at this time, the definition must be interpreted in Plaintiff's favor and in favor of extending coverage.

Viewing the circumstances of the second accident from Plaintiff's perspective, he certainly did not expect to have a brain hemorrhage while driving and arguably did nothing to provoke the second accident.  As in *Wendell*, Plaintiff's second accident was no less fortuitous because it was caused by a latent brain injury suffered in the first accident rather than actual contact with another vehicle.

In sum, Plaintiff is an insured under Defendant's policy.  His injuries sustained in the second accident meet all of the policy requirements and definitions, apart from the "accident" definition as discussed previously.  The policy does not require contact with another vehicle or place any time constraints on the definition of accident.  Montana law interprets the term accident broadly enough that Plaintiff's interpretation of it in this case states a plausible claim for coverage under the policy.  Defendant's motion to dismiss will be denied as to the UIM coverage issue.

### B.  Medical Payments Coverage

 "Waiver is a voluntary and intentional relinquishment of a known right, claim or privilege which may be proved by express declarations or by a course of acts and conduct so as to induce the belief that the intention and purpose was to waive." *Idaho Asphalt Supply v. State Dept. of Transp.*, 991 P.2d 434, 437 (Mont.

1999). Generally, an insurance agent's initial erroneous confirmation that coverage exists does not create coverage for risks the policy expressly excludes. *Lee v. USAA Cas. Ins. Co.*, 22 P.3d 631 (Mont. 2001). If the insured has detrimentally relied on the assurance that coverage exists, courts are more likely to afford relief under theories of waiver or estoppel. *Id.*

Defendant's mistaken medical payment does not waive its defense under the employee exclusion. The employee exclusion to the medical payment endorsement states "[t]his insurance does not apply to any of the following: . . . 'Bodily injury' to your 'employee' arising out of and in the course of employment by you." (Doc. 19-1 at 42.) Plaintiff was not entitled to payment under the medical payment endorsement because he was working in the course of his employment at the time of the second accident. (Doc. 22 at 12.) Defendant did not expressly declare that it was waiving the employee exclusion when it paid Plaintiff, nor was the payment an intentional relinquishment of a known right. Defendant asserts the payment was made mistakenly, apparently prior to its knowledge of the employee exclusion. (Doc. 23 at 7.) Defendant is not seeking to recover the $5,000–it seeks a declaration that Plaintiff is not entitled to any further medical payments under the policy endorsement. Defendant is correct. Plaintiff was never entitled to any medical payments because of the employee exclusion in

the policy. There is no evidence Plaintiff detrimentally relied on the mistaken payment; rather, he received $5,000 to which he was not entitled. Defendant did not waive its right to assert the employee exclusion by making an erroneous payment, and Plaintiff is not entitled to any further medical payments under the policy. Defendant's motion is therefore granted in part on the medical payments issue.

Accordingly, IT IS ORDERED:

1. Defendant's motion to dismiss (doc. 18) is DENIED as to coverage under the UIM policy.

2. Defendant's motion to dismiss (doc. 18) is GRANTED as to coverage under the medical payment endorsement.

DATED this 20th day of November, 2012.

_____
Dana L. Christensen, District Judge
United States District Court